**GOVERNMENT OF the VIRGIN ISLANDS**

v.

**George EDWARDS, Appellant.**

**No. 89–3509.**

United States Court of Appeals, Third Circuit.

Argued April 24, 1990.

Decided May 18, 1990.

Melody M. Walcott (argued), Asst. Federal Public Defender, Christiansted, Virgin Islands, for appellant.

Terry M. Halpern, U.S. Atty., Victoria Boynton (argued), Sp. Asst. U.S. Atty., Charlotte Amalie, U.S. Virgin Islands, for appellee.

Before SLOVITER, STAPLETON, and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

On this direct appeal from a judgment of conviction and sentence, George Edwards raises five issues. He argues that it was plain error for the magistrate to preside over the jury voir dire and selection, that the district court abused its discretion by allowing the government to introduce evidence under Federal Rule of Evidence 404(b), that the district court erred in denying his motion for judgment of acquittal, that the jury verdict is inconsistent, and that the district court should have granted his motion for return of property under Fed.R.Crim.P. 41(e).

The District Court of the Virgin Islands had jurisdiction over this trial pursuant to 48 U.S.C. § 1612 (Supp. III 1985). This court has jurisdiction of this appeal from a conviction and sentence pursuant to 28 U.S.C. § 1291 (1982).

I.

On October 4, 1988, items valued at over $7,000 were stolen from the Alcovers' apartment. The perpetrator gained access to the apartment through the rear bedroom window. The Alcovers lived in the east end of a duplex on a dead-end street. On the same day, the apartment next door occupied by Ms. Hammel was also burglarized. The person gained entry to the Hammel apartment using the same method as was used to enter the Alcover residence— through the rear bedroom window.

George Edwards was charged in an information with burglary in the third degree in violation of V.I. Code Ann. tit. 14 § 444 (Supp.1989) and grand larceny in violation of V.I. Code Ann. tit. 14 § 1083(1) (1964) in connection with the burglary of the Alcover residence. The magistrate presided, without the defendant protesting, over the jury voir dire and selection.

At trial, Mrs. Alcover testified that she returned home on October 4 to find her

dog, which had been locked in the apartment that morning, running in the street. With a neighbor, she entered her home to find that someone had broken in. Four louvers had been removed from the bedroom window and stacked on the rear deck.

The government then made a motion under Rule 404(b) to introduce evidence concerning a burglary at the residence of Ms. Hammel, a neighbor of the Alcovers. The court admitted the evidence, finding that "[f]ingerprint evidence in a fact situation such as this would go to absence of mistake. It would go to identity. It may indeed to go [sic] intent. But it seems to me squarely within the import and purpose of the Rule." App. at 13–14. Hammel testified that on the same day as the Alcover break-in, she returned home from work to find that the police were there, that her apartment had been broken into, and that the intruder had gained entry by removing the bottom four louvers from the rear bedroom window.

The evidence at trial that directly implicated Edwards consisted of expert testimony that the one latent fingerprint found on the Alcovers' louvers and the two latent fingerprints found on Hammel's louvers matched Edwards' prints. The defendant, at the close of the government's case, made a motion for acquittal, which was denied by the court. The jury returned a verdict, finding him guilty of burglary in the third degree but acquitting him on the grand larceny charge. Finally, the defendant made a motion under Fed.R.Crim.P. 41(e) to have the government return the jewelry found on the defendant when he was arrested, which the court also denied. Edward appeals.

## II.

■ Edwards asserts on appeal that the district court committed error in allowing the magistrate to conduct jury selection in Edwards' felony criminal case. Because he did not object at the time, Edwards argues that the error is plain error, and that even if the assignment of the duties did not constitute plain error, the issue of a magistrate's power is a jurisdictional question which is always reviewable by a court.

Under the Federal Magistrates Act, a magistrate is given the power to be assigned additional duties that are "not inconsistent with the Constitution and laws of the United States." 28 U.S.C.A. § 636(b)(3) (1982). The Supreme Court recently held that this language does not include the duty of jury selection and that a defendant may demand an Article III judge to conduct voir dire. *Gomez v. United States,* —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). *Gomez,* however, was a case in which the defendant, unlike Edwards, preserved his objection to proceeding with voir dire before a magistrate. *Id.* 109 S.Ct. at 2248.

The issue before us here is precisely the same as that we faced recently in *Government of the Virgin Islands v. Williams,* 892 F.2d 305, 309–10 (3d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2211, 109 L.Ed.2d 537 (1990). In *Williams,* we denominated the claim that the magistrate has no power to preside at the voir dire as "jurisdictional in nature," *id.* at 309, and held that as a result we could review the claim notwithstanding the defendant's failure to comply with the contemporaneous objection rule. However, when we reached the merits, we construed *Gomez* as holding merely that a defendant has a right to demand the presence of an Article III judge at voir dire. In the absence of objection by a defendant, a magistrate may preside at jury selection.

We are bound by the holding in *Williams* that "section 636(b)(3) of the Federal Magistrates Act permits a district court to delegate voir dire to a magistrate as an 'additional duty,' so long as the defendant expresses no objection." *Id.* at 312. Because Edwards did not object to the use of a magistrate to conduct jury voir dire and selection, we reject his contention that the procedure was flawed.

## III.

■ Edwards also appeals the decision by the trial court to allow the government to present the evidence of the fingerprints found on the louvers from Hammel's win-

dows and her testimony concerning the break-in. A district court's ruling under Fed.R.Evid. Rule 404(b), which allows the admission of evidence of other crimes, wrongs or acts for purposes other than showing the character of the person and that the person acted in conformity therewith, is reviewed under an abuse of discretion standard. *See United States v. Traitz*, 871 F.2d 368, 389 (3d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 78, 107 L.Ed.2d 44 (1989); *see also United States v. Scarfo*, 850 F.2d 1015, 1021 (3d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 263, 102 L.Ed.2d 251 (1988).

There are four relevant factors: (1) the other crimes evidence must have a proper purpose; (2) the proffered evidence must be relevant under Fed.R.Evid. 402 as enforced through Rule 104(b); (3) its probative value must outweigh its potential for unfair prejudice under Rule 403 balancing; and (4) the court must charge the jury to consider the other crimes evidence only for the limited purpose for which it is admitted. *Scarfo*, 850 F.2d at 1019; *see Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988).

Bearing in mind that Rule 404(b) is a rule of inclusion, not exclusion, which emphasizes the admissibility of other crimes evidence, *Scarfo*, 850 F.2d at 1019, we conclude that the district court did not abuse its discretion. The evidence was not proffered to show that the defendant had the propensity to burglarize apartments. Instead, the evidence of Edwards' fingerprints on Hammel's louvers fell within Rule 404(b) because it increased the probability that the print on the Alcovers' pane did not get there by chance. It was highly probative. It showed opportunity, firmly placing Edwards at the back deck of the duplex. Edwards' fingerprints on two, not merely one, set of back bedroom window louvers, both of which were entered on the same day to effectuate two burglaries, decreases the probability of a mistaken fingerprint identification on the Alcovers' pane. The evidence was patently relevant to the ultimate issue before the jury, which could have concluded that Edwards had placed his prints on Hammel's window when he left the print on the Alcovers' window. Nor was it unreasonable for the district court to have determined that the evidence's probative value placing Edwards on the back deck of the duplex outweighed its prejudicial value.

The court gave the appropriate limiting instruction, telling the jury:

> Defendant, George Edwards, is not being charged in this information with regard to a breaking in of the neighbor's house. The evidence ... is being admitted ... merely to show ... that the fingerprint evidence did not occur by accident, or to show pattern, or to show intent....
>
> You are not permitted to consider this testimony in evaluating the character of the defendant. It is not offered to show the propensity to commit crime....

App. at 44–45.

We, therefore, reject Edwards' contention that the district court abused its discretion in admitting the evidence of the burglary at Hammel's apartment and the presence of Edwards' fingerprints on Hammel's louvers.

## IV.

■ Edwards also appeals the denial by the trial court of his motion for acquittal. "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *United States v. Aguilar*, 843 F.2d 155, 157 (3d Cir.1988) (quoting *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)), *cert. denied*, —— U.S. ——, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988); *see also United States v. Scanzello*, 832 F.2d 18, 20 (3d Cir.1987). Thus, "the relevant question is whether ... *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Aguilar*, 843 F.2d at 157 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)).

The evidence against Edwards on the breaking and entering charge was circumstantial. However, that does not mean that it does not provide an adequate basis

for the jury verdict. "Since circumstantial and testimonial evidence are indistinguishable insofar as the jury's fact-finding function is concerned, all that is to be required of the jury is that it weigh all of the evidence, direct or circumstantial, against the standard of reasonable doubt." *United States v. Hamilton*, 457 F.2d 95, 98 (3d Cir.1972).

Edwards' attempt to analogize this situation to cases where the fingerprints were found on movable items, such as a car, is inapposite. Unlike the situation where a car may have been parked on a street and various people passing by may have left their prints, these louvers were in the rear of a building located at the end of a dead-end road. Mrs. Alcover washed her louvers once a week, Ms. Hammel approximately once a month. Thus, the prints could not have been on the panes for an extended period of time. Although it is true that Edwards could have left the prints on the outside of the glass while just trespassing in the backyard, "evidence need not be inconsistent with every conclusion save that of guilt, provided it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt." *United States v. Hamilton*, 457 F.2d 95, 98 (3d Cir.1972) (quoting *United States v. Giuliano*, 263 F.2d 582, 584 (3d Cir.1959)); *see also United States v. Sandini*, 888 F.2d 300, 311 (3d Cir.1989), cert. denied, —— U.S. ——, 110 S.Ct. 1831, 108 L.Ed.2d 959 (1990); *United States v. Mundt*, 846 F.2d 1157 (8th Cir.1988) (circumstantial evidence that defendant had unattended access to the vaults of two different banks at the time each bank was robbed was sufficient to support defendant's conviction). There was sufficient evidence, when viewed in the light most favorable to the government, for a rational trier of fact to have found Edwards guilty. *See United States v. Bush*, 749 F.2d 1227 (7th Cir.1984) (where defendant had no legitimate access to a bank safe, the presence of his fingerprints on two different boxes in the safe was sufficient to sustain his conviction for armed robbery in view of the minute chance that the prints were placed on the boxes other than during the robbery).

## V.

■ Edwards argues that the jury verdict was inconsistent, and that an essential element of the crime of burglary in the third degree, that dealing with intent to commit an offense within the dwelling, was missing because the jury acquitted him on the grand larceny charge.

Under the applicable statute, burglary in the third degree is committed whenever someone "with intent to commit an offense therein, breaks and enters a dwelling house...." V.I. Code Ann. tit. 14 § 444 (Supp.1989). The statute does not require that an offense have been committed within the dwelling, just that there be the intent to commit an offense. Edwards' acquittal on the grand larceny charge means, at most, that the jury was unable to find beyond a reasonable doubt that Edwards took property of $100 or more in value in violation of section 1083(1) of V.I. Code Ann. tit. 14 (1964). This did not preclude the jury from having found that he broke in and entered the Alcovers' home with the intent to commit an offense, to wit, grand larceny as charged in the information.

■ Nor does Edwards' complaint that it was inconsistent for the jury to acquit him on grand larceny and convict him on burglary fare any better. *See Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). The Supreme Court has made clear that such verdicts are often the result of jury leniency, that the basis for the inconsistency may be in the jury's lenity leading to the acquittal rather than in the conviction, and that the defendant is adequately protected from jury irrationality by the review of the sufficiency of the evidence which would be undertaken by both the trial and the appellate courts. *United States v. Powell*, 469 U.S. 57, 64–67, 105 S.Ct. 471, 476–77, 83 L.Ed.2d 461 (1984) (reaffirming *Dunn*). This case provides no exception and thus, even if the verdict were inconsistent, we would have no basis to set aside the conviction.

## VI.

Edwards' final argument is that the district court erred in denying his motion, filed pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, for return of the jewelry he was wearing at the time of his arrest. The jewelry included two gold chains, one gold bracelet, a pendant with four diamonds, and five gold rings, four containing precious stones and a fifth that carried initials other than Edwards'. The police seized these items as potential evidence, but none of the pieces was identified by either Ms. Hammel or Mrs. Alcover.

The district court denied Edwards' Rule 41(e) motion summarily without a hearing, but with leave to refile with proof of ownership. Edwards filed a motion for reconsideration. The matter was considered by the district court at the time of sentencing. Edwards maintained that it was not his burden to provide proof of ownership. The government argued that the jewelry might be from another robbery, that Edwards acted in a suspicious manner in the police car when he tried to give the jewelry to his girlfriend, that the jewelry was likely contraband because Edwards was unemployed and had no means of support, and that the United States Attorney would request the Chief of Police to put an advertisement in the newspaper describing the jewelry and seeking to identify any claimant.

█ After the court gave Edwards the opportunity to produce evidence on the Rule 41(e) motion, Edwards stipulated that he concealed part of the jewelry on his person, but maintained that this did not shift to him the burden to show ownership. The court reaffirmed the earlier order denying the motion for return of property, holding that "the facts and circumstances described do not lend to a finding that the defendant was in an ordinary and legit-imate possession of these items." App. at 251.

We must first consider whether the order is subject to review at this time. Although an order denying return of property would not be final and appealable if the government were holding the property as evidence in a potential criminal prosecution, *see Di-Bella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962) (ruling on pre-indictment motion to suppress the evidentiary use at trial of material allegedly procured through an unreasonable search and seizure not final for purposes of appeal under section 1291), an order is final if the essential character of the motion is for the return of property which is not intimately involved in the criminal process, *see In re Search Warrant (Sealed)*, 810 F.2d 67 (3d Cir.) (order appealable because sufficiently independent from the anticipated criminal proceedings), *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3233, 97 L.Ed.2d 739 (1987); *see also United States v. Premises Known as 608 Taylor Ave.*, 584 F.2d 1297, 1300 (3d Cir.1978).

This case falls within the latter category because Edwards made this motion solely for the return of property, the trial has ended, and the jewelry was not identified by either Alcover or Hammel. The mere possibility of a prosecution does not deprive an order of finality. *See 608 Taylor Ave.*, 584 F.2d at 1301. Thus, we have jurisdiction from the final order of the district court denying Edward's motion.

Before its recent amendment, Rule 41(e) was limited to motions for the return of property illegally seized.[1] Persons whose property had been legally obtained by the government were obliged to apply to the district court for use of its supervisory power, and the court could consider the reasonableness of the government's continued retention of the property before order-

---

1. Rule 41(e) provided:
   [a] person aggrieved by an unlawful search and seizure may move the district court ... for the return of the property on the ground that such person is entitled to lawful possession of the property which was illegally seized.... If the motion is granted, the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.
   Fed.R.Crim.P. 41(e) (subsequently amended effective Dec. 1, 1989).

ing its return. *See 608 Taylor Ave.*, 584 F.2d at 1302–04.[2]

Under the 1989 amendment, Rule 41(e) is no longer limited to property held following an unlawful search or seizure. Now, any person aggrieved by "the deprivation of property" may file a Rule 41(e) motion to require the government to return the property.[3] *See* Fed.R.Crim.P. 41(e) (amended effective Dec. 1, 1989), 124 F.R.D. at 426–27.[4]

The rule in its earlier version did not contain any suggestion of the standard to govern the determination whether the property should be returned to the movant, and the amendment did not speak to that issue. The Advisory Committee Notes to the 1989 amendment suggest merely that "reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property," *see* Committee Note, Fed.R.Crim.P. 41(e), 124 F.R.D. at 427, a standard comparable to that which we used in *608 Taylor Ave.*

■ The government argues that the district court did not err in denying Edwards' motion under Rule 41(e) because Edwards has "fail[ed] to establish that he is entitled to the property." Appellee's Brief at 22. We agree that the circumstances of Edwards' possession of expensive jewelry are suspicious particularly in light of his efforts to secrete some of the jewelry from the authorities. However, although Rule 41(e) provides for the motion to be brought by a person "on the ground that such person is entitled to *lawful* possession of the property," (emphasis added), nothing in the rule places the burden on a person in possession of property to prove entitlement. The Advisory Committee Notes speak to nothing more than the "possessory" interests of the movant. *See* 124 F.R.D. at 429.

Edwards was admittedly in possession of the jewelry when it was taken from his immediate possession at the police station. It has long been a principle of common law that one in possession of property has the right to keep it against all but those with a better title. *See, e.g., Anderson v. Gouldberg,* 51 Minn. 294, 53 N.W. 636 (1892), citing *Armory v. Delamirie,* 1 Strange 504, 93 Eng. Reprint 664.

The same principle has been applied in cases under Rule 41(e). In *United States v. Wright,* 610 F.2d 930, 939 (D.C.Cir.1979), the court rejected the government's contention "that the mere fact of seizure requires that entitlement be established anew." *Accord In re Smith,* 888 F.2d 167, 168–69 (D.C.Cir.1989) (per curiam). It follows that by virtue of his possession, Edwards made a sufficient showing of entitlement unless the government or a third party could show a cognizable claim of ownership or right to possession adverse to that of defendant. *See United States v. Palmer,* 565 F.2d 1063, 1065 (9th Cir.1977).

2. In his brief before us, Edwards maintained that his 41(e) motion alleged that the seizure was illegal. Brief for Appellant at 38. However, his counsel stated at the hearing before the district court that the seizure was proper. App. at 252. Under amended Rule 41(e), this inconsistency is irrelevant. Further, Edwards could have made a motion for return of property under this court's precedent in *608 Taylor Ave.* without alleging an illegal seizure. For these reasons, we assume without deciding, that the seizure was legal.

3. The amended Rule 41(e) provides:
[a] person aggrieved by an unlawful search and seizure or by the deprivation of property may move ... for the return of the property on the ground that such person is entitled to lawful possession of the property.... If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing ... after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.
Fed.R.Crim.P. 41(e) (as amended).

4. The Supreme Court ordered that the amendment to Rule 41(e) take effect on December 1, 1989 and "govern all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all proceedings in criminal cases then pending." 124 F.R.D. 399 (1989). Although not every motion under Rule 41(e) is part of a criminal case, because the Rule 41(e) motion in this case was akin to a criminal proceeding, we construe the amended rule as intended to apply to this pending proceeding. *See Blinder, Robinson & Co., Inc. v. United States,* 897 F.2d 1549 (10th Cir.1990).

We need not, in this case, decide the parameters of the government's right to hold temporarily property taken from a criminal defendant when it has a reasonable question as to ownership. We have no doubt that it would be antithetical to the notions of fairness and justice under which we operate to convert the government's right to temporary possession to a right to hold such property indefinitely. Indeed, if the government had such a right there would have been no need for Congress to have enacted specific statutes directed to circumstances under which forfeiture may be effected, *see, e.g.,* 18 U.S.C. § 3554 (Supp. II 1984), none of which are applicable here. Thus, the burden of proof was on the government to show that it had a legitimate reason not to return the property to the person from whom it was seized. *See United States v. Martinson,* 809 F.2d 1364, 1369 (9th Cir.1987).

▇ In this case, the government satisfied itself that the property was not taken from either the Hammel or Alcover burglaries. The government has not suggested that the property is needed to aid it in any other investigation. It has had ample opportunity to locate any persons who contend that they are the rightful owners of the property. At the oral argument before us, more than a year after the seizure of the property, the government was still unable to posit anyone, other than Edwards, to whom the property belonged, and thus we see no reason to direct an evidentiary hearing.

Under these circumstances, we will reverse the district court's order denying the Rule 41(e) motion with instructions to the district court to order the government to return to Edwards the property taken from him.[5]

## VII.

For the reasons set forth above, we will affirm the judgment of conviction and sen-

tence, but we will reverse the district court's order denying the Rule 41(e) motion and remand for further proceedings in accordance with this opinion.

---

**5.** Of course, we do not preclude the government from photographing the property or taking any reasonable steps to record the property for future identification. In addition, the district court may want to consider whether, if the property is as valuable as the briefs suggest, Edwards will continue to be eligible for the services of the public defender. We intimate no view on this issue.